# Exhibit 2



# Comments on behalf of CATA
# El Comité de Apoyo a Los Trabajadores Agrícolas

## Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A Nonimmigrants in Non-Range Occupations in the United States (RIN 1205-AC24)

December 1, 2025

**To:   Susan Frazier**
Acting Assistant Secretary for Employment and Training, Labor
U.S. Department of Labor

**Brian Pasternak**
Administrator
Office of Foreign Labor Certification
Employment and Training Administration,
U.S. Department of Labor

*Submitted electronically via regulations.gov*

These comments are submitted on behalf of CATA, El Comité de Apoyo a Los Trabajadores Agrícolas, by and through their counsel Justice at Work, in opposition to the interim final rule adopted by the Department of Labor (DOL) effective October 2, 2025 without any opportunity for public comment prior to their adoption by DOL. **CATA has reviewed comments prepared by Farmworker Justice and adopts and incorporates those comments by reference into this statement**.

CATA was founded in 1979 and has been active in advocacy and litigation relating to temporary foreign worker programs including the initial H-2 program and its successors the H-2A agricultural temporary worker program and the H-2B non-agricultural temporary worker program.

These comments principally add to the national Farmworker Justice submitted comments by initially focusing on the gross deficiency in the resurrection for the H-2A program of a DOL methodology which had consistently reduced wages for companion H-2B non-agricultural temporary worker program after DOL itself recognized the deficiency of that mythology 15 years ago.

1

I.  **Relevance of CATA Challenges to Use of Skill Level Wage Differentials in the H-2B program**

CATA was the lead plaintiff against 2008 regulations adopted by the Bush administration effective January 2009 for the H-2B program that incorporated many of the same procedures for establishing sub-standard minimum prevailing wage rates for the H-2B program as provided for in the October 2025 interim final rule for the H-2A program. *See*, *Comité de Apoyo a Los Trabajadores Agrícolas, et al. v. Hilda Solis, et al.* (EDPA, Civil Action No. 09–240).

In that litigation, the same depressed skill level 1wage adopted by DOL in October 2025 for the H-2A program was established in relationship to the H-2B program as having no valid statistical or rational basis and was ruled invalid by the District Court.  In subsequent rulemaking that skill level wage rate was abandoned by DOL as inappropriate for the H-2B program. *See* Proposed Rule, 75 *Fed. Reg.* 61,578 (Oct. 5, 2010*)* and rule at 76 *Fed Reg* 3452 (Jan. 19, 2011).

DOL in its October 5, 2010 proposed rulemaking for the H-2B program stated at 75 *Fed Reg* at 61580:

> "The types of jobs found in the H-2B program involve few if any skill differentials necessitating tiered wage levels. The Department has an obligation to require H-2B employers to offer wages that do not adversely affect the wages of their U.S. workforce. <u>By their very existence, however, multiple wage rates, particularly in a program in which most job opportunities have few or no skill requirements, stratify wages and inappropriately allow employers to force much of the wage-earning workforce into a lower wage. H-2B workers, most of whom fill jobs with low skill levels, are more likely to be classified at the low end of the wage tiers, ultimately adversely affecting the wages of U.S. workers in those same jobs</u>. In addition, even if skill-based wage tiers were desirable as a theoretical matter, neither the OES nor any other comprehensive data series that we are aware of attempts to capture such variations. While the Department has, since 1998, created tiered wages by mathematically manipulating OES data in accordance with the statute, <u>the actual OES survey instrument does not solicit data concerning the skill level of the workers whose wages are being reported.</u> *While the assumption that lower wages reflect lower skills (the basis for the current methodology) may have some validity in higher skilled occupations, there is no support for that assumption in the case of the lower-skilled occupations that predominate in the H-2B program.*

2

"H-2B disclosure data from the last 10 years demonstrates that many jobs for which employers seek H-2B workers—housekeepers, landscape workers, etc.—clearly require minimal skill to perform, have few special skill or experience requirements, and do not generally have career ladders. These jobs have typically resulted in a Level 1 (the lowest wage level) determination for the H-2B employer, because the jobs themselves do not require the employer to seek workers with higher skill levels. The result is a wage determination that is in fact lower than the average wage paid for many jobs that are of the same classification as those jobs filled under the H-2B program.[2] By allowing jobs to be filled by H-2B workers at these lower wages, a tiered wage system can have a depressive effect on wages of similar domestic workers, ultimately adversely affecting the wages of U.S. workers in those same jobs.[3] The Department cannot continue to allow such wage depression where its mandate is to ensure that the wages of U.S. workers suffer no adverse impact.

"The Department, accordingly, proposes to require that the arithmetic mean of the OES wage rates be the basis for determining the OES component of the prevailing wage rate in the H-2B program as it is the most effective available method for preventing adverse effect on wages. The Department welcomes comment on specific alternatives for wage calculations to meet its mandate for avoiding adverse effect on wages while ensuring that wages reflect economic realities in the marketplace for such jobs."

Footnotes at 75 *Fed Reg* at 6158:

[2] DOL analysis shows that, in about 96 percent of the cases, the H-2B wage is lower than the mean of the OES wage rates for the same occupation.

[3] Absent an increase in the number of workers under the H-2B program to fill the temporary labor shortage, wages for these temporary jobs would rise in order to dispel the shortage, until sufficient additional domestic labor is attracted into the market. These wage increases are avoided, however, under the prevailing wage requirements of the H-2B program as currently configured. Moreover, when H-2B wages are set lower than wages paid to U.S. workers in similar jobs, as they generally are under the tiered wage system, the H-2B wages may not actually reflect the economic value of the work, impeding any upward pressure on wages that would otherwise result from the labor shortage.

In its subsequent rulemaking proceeding at 76 *Fed Reg* 3452-3461 (Jan. 19, 2011) DOL stated (*footnote citations omitted below*):

> "In early 2009, a lawsuit was filed challenging various aspects of the Department's H-2B procedures included in the 2008 Final Rule; among the issues raised was the use of the four-tier wage structure in the H-2B program and the optional use of SCA and DBA wages. *Comité de Apoyo a los Trabajadores Agricolas (CATA)* v. *Solis,* Civil No. 2:09-cv-240-LP, 2010 WL 3431761 (E.D. Pa.). In its August 30, 2010 decision, the court ruled that the Department had violated the Administrative Procedure Act (APA) in failing to adequately explain its reasoning for using skill levels as part of the H-2B prevailing wage determinations, and failing to consider comments relating to the choice of appropriate data sets in deciding to rely on OES data rather than SCA and DBA in setting the prevailing wage rates. The court ordered the Department to "promulgate new rules concerning the calculation of the prevailing wage rate in the H-2B program that are in compliance with the Administrative Procedure Act no later than 120 days from the date of this order."

*          *          *

> "The NPRM proposed to eliminate the use of the four-tier wage structure for the H-2B program in favor of the mean OES wage for each occupational category…. After a thorough review of the comments, the Department has decided to finalize these changes.

*          *          *

**3. The Elimination of the Four-tier Wage Structure**

"In the NPRM, the Department proposed to eliminate the use of the four-tier wage structure and *implement a single prevailing wage rate based on the arithmetic mean of the OES wage data for the job classification in the area of intended employment*. The NPRM cited a number of reasons why the four tiers did not establish an adequate prevailing wage. After thorough consideration of the public comments, the Department has decided that the proposed elimination of the use of the four-tier wage structure is appropriate.

*          *          *

4

### a. The Four-Tier Wage Structure is Not Suitable for Unskilled Jobs

\*                \*                \*

"As discussed elsewhere in this Final Rule, the Department's obligation to administer the H-2B program requires that the prevailing wage which is offered and paid in the program reflect the minimum requirements of the position. This requirement reflects the *Department's obligations to avoid adverse effect on the wages of workers and enable meaningful access to job opportunities for U.S. workers. Because the Department has determined that the majority of H-2B jobs reflect no or few skill differentials, the appropriate prevailing wage an employer must offer and pay*, absent a higher CBA, SCA, or DBA wage, *is the arithmetic mean of the OES wage data of workers who are similarly employed in the area of intended employment*. Where an employer's job opportunity requires skills beyond those minimally required for the position (which may include but are not limited to additional certifications based on experience, or safety accreditations), the employer is at liberty to offer and pay to its workers in excess of the prevailing wage to account for the additional skills or experience which the employer requires.

\*                \*                \*

"As discussed in the NPRM, the Department has found that almost all jobs for which employers seek H-2B workers require little, if any, skill—an assertion with which few commenters disagreed. H-2B disclosure data from Fiscal Year (FY) 2007 to 2009 demonstrates that most of the jobs included in the top five industries for which the greatest annual numbers of H-2B workers were certified—construction; amusement, gambling and recreation; landscaping services; janitorial services; and food services and drinking places—require minimal skill to perform, according to every standardized source available to the Department, such as the SOC, O\*NET and the Occupational Outlook Handbook. These jobs include, but are not limited to, landscaper laborer, housekeeping cleaner, construction worker, forestry worker, and amusement park worker, which make up the majority of occupations certified in those years, all of which require less than 2 years of experience to perform, if that.[10] *This prevalence of job opportunities in low-skilled categories is generally reflected in the H-2B employer applications. These jobs have typically resulted in a Level I wage determination, which is lower than the average wage paid to similarly employed workers in job classifications in non-H-2B jobs.*

"Under the Department's 2005 Prevailing Wage Guidance, the determination of an appropriate wage level is dependent upon the duties and requirements of the job opportunity as described by the employer …. The Department applies a standard analysis of the job position (found in the 2005 Prevailing Wage Guidance) to determine the appropriate wage level. In doing so, the Department compares the employer's job requirements with those typical of the job classification. A Level I [11] wage is based on a determination that the job position described by the employer does not deviate, or only minimally deviates, from the typical minimum requirements of the corresponding SOC-based job classification contained in O*NET, including the specific Job Zone. *A Job Zone reference indicates the level of skill, education, experience and/or preparation typically required to perform the job, and ranges from one (for which little or no preparation is needed)* to five (in which extensive education, training, and preparation are required to adequately perform the job duties at the entry-level). For example, one of the most requested H-2B job classifications, landscaping and groundskeeping worker, is classified as falling within O*NET Job Zone One.[12] All of the other frequently represented positions in the program: janitors and cleaners, housekeepers, construction laborers, and amusement and recreation attendants, also are categorized within Job Zone One.

"The notion that the four wage tiers have a meaningful relationship to skill, as expressed by many commenters including the Chief Counsel for Advocacy, SBA, represents a misunderstanding of the way in which the Department calculates the four tiers. *The Department does not collect data associated with skill levels, but instead collects data across the job spectrum*. The Department approximates skill levels from that generalized data, not because the data can be disaggregated by skill level, but because it is required to assign a value to four skill levels, in accordance with the formula set forth at section 212(p)(4) of the INA. *The formula is artificial, designed to approximate arbitrary skill levels and has a skewing effect when applied to the wage rates applicable to typical H-2B jobs, in which there are fewer skill differentials.* The four wage levels currently used by the Department are calculated by applying a statutory mathematical formula to the wage distribution corresponding to a particular occupational classification in the area of intended employment. *The Level I wage is established by taking the arithmetic mean of the bottom one-third of the wage distribution;* the Level IV wage rate is determined by establishing the arithmetic mean of the top two-thirds of the wage distribution…

*          *          *

"Thus, *there is no correlation in the four-tier wage structure between the skill level required to perform a job and the wage attached to it*. An employer can pay a higher wage for many reasons other than skill level. The lack of a meaningful nexus between the skill level and the compensation is significant where applied to the wage rates assigned to typical H-2B jobs in which there are fewer skill differences, because in most cases, a basic skill set is all that is required to adequately perform these jobs. The range of wages reported in these low-skilled occupations represents the range of pay in the occupation, not the range of pay for skills associated with the job opportunity.

"These comments did not identify any significant data or analysis that undermines the essential component of the analysis contained in the NPRM: that there are no significant skill-based wage differences in the occupations that predominate in the H-2B program, and to the extent such differences might exist, those differences are not captured by the existing four-tier wage structure. No commenter directly addressed the Department's concerns about these deficiencies in the existing methodology. N*o commenter challenged the fact that the OES survey does not collect information about the skills or responsibilities of the workers whose wages are included in the survey*. *No commenter offered any analytical or empirical support for the notion that the mean of the lowest one-third of the workers in the survey somehow reflects the entry-level wage*, nor offered an alternative to the OES wage methodology that might better reflect the purported differences in skills within an occupation. *While skill-based wage differences may exist in these occupations, there is insufficient evidence to justify any judgment about what that wage rate should be within a particular occupational code, and it is more appropriate for the employer to select a different occupational code that is more suitable for the level of skills and responsibilities required for the position*. In the absence of reliable information that would permit the Department to make and quantify such a judgment, *our responsibility to avoid adverse effect mandates that the average of the OES wage for that occupation be considered in determining the prevailing wage for the occupation for which workers are sought.* Again, as noted above, this does not prevent employers from offering higher wages if necessary to attract appropriate applicants.

"Even with the elimination of the four-tier wage structure from the H-2B program, employers would still be able to obtain wage determinations that account for differences in skill. The SOC classification system generally groups job classifications into larger categories encompassing related

7

positions; for example, it recognizes entry-level positions such as the landscaping and groundskeeping workers, as well as positions requiring additional skills or experience such as first-line supervisors/managers of landscaping, lawn service, and groundskeeping workers. The latter are classified as Job Zone Two and contain different and/or additional job duties and requirements, which, if selected by the employer, yield a prevailing wage that is higher than that for the low-skilled worker in the same broader SOC category. The variety of SOC job classifications reflecting different kinds and levels of skills ensures that the employer has the latitude to select a different SOC code for the Department's consideration to reflect a position which requires additional skills and experience, and which permits the employer to adequately compensate for those additional skills and experience.

"Therefore, the Department disagrees with some commenters' assertions that raising the OES base wage to the mean necessarily means having to increase job requirements or otherwise justify that increase with additional skills. The jobs themselves are written to incorporate the basic skills at entry. Use of the arithmetic mean in determining the prevailing wage simply recognizes that those who are performing the tasks of the job at Level I are performing the same tasks at Level III, with the distinction between the wages for the two levels not being based on a differential in skills.

"If an employer chooses to increase its requirements for the position, it should consider classifying the occupation under an SOC code that more closely approximates the requirements and duties of the job; otherwise, the employer will need to justify the higher requirements as a business necessity. Additionally, nothing in this rule prevents an employer from paying a wage higher than the prevailing wage to a worker who possesses skills, licenses, certifications, etc. above those listed in its H-2B application. Employers who cannot use a different O*NET/OES category remain free to offer a wage higher than the established prevailing wage if they desire to do so. Employers are also at liberty to specify experience or other requirements consistent with the long-standing program requirement that job qualification must be normal to the occupation, or are otherwise justified by business necessity. This rule does not prevent monetary rewards for those employees who have earned them through experience, skill acquisition, or even employer loyalty. Nothing in this Final Rule suggests nor should be construed to prevent the employer from paying its workers, U.S. and H-2B, more than the required prevailing wage.

*          *          *

"*The purpose of establishing the prevailing wage is to establish the minimum wage that avoids adverse effect, considering the actual requirements of the position for which H-2B certification is being sought*. It is not to ensure that H-2B workers or workers whose experience or skills exceed those of the position receive premium pay for having more in the way of skills, knowledge, or experience than what the position actually requires. The Department, by this Final Rule, is only setting the floor against which compensation for the basic occupation for which an employer seeks H-2B workers is to be measured, in accordance with its obligations under the H-2B program.

\*          \*          \*

"The history of the H-2B program… indicates that it grew out of its *agricultural predecessor*, the Bracero program, as a companion for employers requiring assistance with low-skilled non-agricultural work. Although the Department recognizes that not all positions requested through the H-2B program are for low-skilled labor, **the program is still overwhelmingly used for work requiring lesser skilled workers—those occupations that require at most 2 years, and in most cases much less than 2 years, of education, training, or experience to perform the job duties, tasks, and activities.** As discussed above, there is no justification for stratifying wage levels to artificially create wage-based skill levels when in fact there is no great difference in skill levels with which to stratify the job.

**c. Elimination of the Four-tier Wage Structure in the H-2A Program**

"In proposing the elimination of the four-tier wage structure in favor of a single arithmetic mean wage, the Department noted that it had previously taken similar action in the H-2A program. One commenter disagreed with the Department's reasoning behind the elimination of the four-tier wage structure arguing that the H-2A and H-2B programs are different and suggested that the Department continue to treat the H-2B program as distinct. Another commenter asserted that the Department's rationale for the elimination of the four-tier wage structure in the H-2A program was based on the concern that the OES data is inaccurate and not concern over adverse effect.

"**The H-2A and H-2B temporary programs are similar in that they both involve largely low-skilled occupations where skill-based wage differences do not appear to exist to any significant degree and to the extent they do exist, the differences are not reflected in the OES survey**

9

**data.** The Department especially limited its rationale to eliminating OES in the H-2A program to the inappropriateness of the OES in light of a more appropriate wage source (e.g., the Farm Labor Survey). No similar data source exists for the range of jobs in the H-2B program. Thus, the Department has adopted the OES as the best data source available for the H-2B program, absent an applicable CBA, SCA, or DBA wage rate. *The lack of skill-based wage differences is a sufficient basis to support the determination that the four-tier wage structure should no longer be used in either program.*:

DOL's 2010-2011 rulemaking for the H-2B program rejecting reduced "skill level" wages for that program is directly applicable to the H-2A program and the October 2025 Interim Final Rule should be vacated for its failure to address these issues or to give the public an opportunity to comment on them before implementing interim rules that are already reducing wages required to be paid by H-2A employers.

## II.    Relevance of O*Net Job Zones

DOL's 2010-2011 rulemaking for the H-2B program identified the DOL O*Net job classifications as directly relevant to DOL's conclusion that artificial skill level determinations were not appropriate for the low skilled Job Zone 1 and Job Zone 2 occupations as described in the O*Net system. Below is information from DOL's description of these classifications.

https://www.onetonline.org/help/online/zones

# O*NET OnLine Help
## Job Zones
### Overview

A Job Zone is a group of occupations that are similar in:

how much education people need to do the work,

how much related experience people need to do the work, and

how much on-the-job training people need to do the work.

The five Job Zones are:

Job Zone 1 - occupations that need little or no preparation

Job Zone 2 - occupations that need some preparation

Job Zone 3 - occupations that need medium preparation

Job Zone 4 - occupations that need considerable preparation

Job Zone 5 - occupations that need extensive preparation

10

# Job Zone One: Little or No Preparation Needed

**Education** Some of these occupations may require a high school diploma or GED certificate.

**Related Experience** Little or no previous work-related skill, knowledge, or experience is needed for these occupations. For example, a person can become a waiter or waitress even if he/she has never worked before.

**Job Training** Employees in these occupations need anywhere from a few days to a few months of training. Usually, an experienced worker could show you how to do the job.

**Job Zone Examples** These occupations involve following instructions and helping others. These occupations involve following instructions and helping others. Examples include _agricultural equipment operators_, dishwashers, floor sanders and finishers, landscaping and groundskeeping workers, _logging equipment operators_, baristas, and maids and housekeeping cleaners.

**SVP Range** (Below 4.0)

# Job Zone Two: Some Preparation Needed

**Education** These occupations usually require a high school diploma.

**Related Experience** Some previous work-related skill, knowledge, or experience is usually needed. For example, a teller would benefit from experience working

directly with the public.

**Job Training** Employees in these occupations need anywhere from a few months to one year of working with experienced employees. A recognized apprenticeship program may be associated with these occupations.

**Job Zone Examples** These occupations often involve using your knowledge and skills to help others. Examples include orderlies, counter and rental clerks, customer service representatives, security guards, upholsterers, tellers, and dental

laboratory technicians.

**SVP Range** (4.0 to < 6.0)

---

https://www.onetonline.org/help/online/svp

# O*NET OnLine Help

## Specific Vocational Preparation (SVP)

Specific Vocational Preparation is a component of Worker Characteristics information found in the _Dictionary of Occupational Titles_ (U.S. Department of Labor, 1991).

Specific Vocational Preparation, as defined in Appendix C of the _Dictionary of Occupational Titles_, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.

This training may be acquired in a school, work, military, institutional, or vocational environment. It does not include the orientation time required of a fully qualified worker to become accustomed to the

special conditions of any new job. Specific vocational training includes: vocational education, apprenticeship training, in-plant training, on-the-job training, and essential experience in other jobs.

Specific vocational training includes training given in any of the following circumstances:

Vocational education (high school, commercial or shop training, technical school, art school, and that part of college training which is organized around a specific vocational objective)

Apprenticeship training (for apprenticeable jobs only)

In-plant training (organized classroom study provided by an employer)

On-the-job training (serving as learner or trainee on the job under the instruction of a qualified worker)

Essential experience in other jobs (serving in less responsible jobs, which lead to the higher-grade job, or serving in other jobs which qualify).

The following is an explanation of the various levels of specific vocational preparation:

## Level Time

1. Short demonstration only
2. Anything beyond short demonstration up to and including 1 month
3. Over 1 month up to and including 3 months
4. Over 3 months up to and including 6 months
5. Over 6 months up to and including 1 year
6. Over 1 year up to and including 2 years
7. Over 2 years up to and including 4 years
8. Over 4 years up to and including 10 years
9. Over 10 years

**Note:** The levels of this scale are mutually exclusive and do not overlap.

U.S. Department of Labor. (1991). *Dictionary of Occupational Titles* (Rev. 4th ed 1.

DOL groups five SOC Codes into its Adverse Effect Wage Rate (AEWR) combined SOC code rulemaking largely consistent with past DOL practice for the H-2A program (except for the removal of SOC Code 45-2099 "All Other Agricultural Workers").  Those SOC Codes and their O*Net system coding and Job Zones are as follows:[1]

| SOC | Occupation title (SOC code) | ONET Code | ONET Title | Job Zone |
|---|---|---|---|---|
| 45-2041 | Graders and Sorters, Agricultural Products (45-2041) | 45-2041.00 | Graders and Sorters, Agricultural Products | 1 |
| 45-2091 | Agricultural Equipment Operators (45-2091) | 45-2091.00 | Agricultural Equipment Operators | 1 |
| 45-2092 | Farmworkers and Laborers, Crop, Nursery and Greenhouse Workers (45-2092) | 45-2092.00 | Farmworkers and Laborers, Crop, Nursery, and Greenhouse | 1 |
| 45-2093 | Farmworkers, Farm, Ranch, and Aquacultural Animals (45-2093) | 45-2093.00 | Farmworkers, Farm, Ranch, and Aquacultural Animals | 2 |
| 53-7064 | Packers and Packagers, Hand (53-7064) | 53-7064.00 | Packers and Packagers, Hand | 2 |

---

[1] ONET Codes in the chart below are hypertext linked to DOL's O*Net web pages for that ONET Code.

As with the H-2B program each of the SOC and companion O*Net codes are either Job Zone 1 or Job Zone 2 occupations requiring minimal training or experience.

Analysis of DOL data for FY24 and FY25 jobs indicates that in FY24 and FY25 disclosure data reflects that these jobs were overwhelmingly Job Zone 1 positions.

| Job Zone ONET | FY24 | FY24% | FY25 | FY25% |
|---|---|---|---|---|
| 1 | 353,415 | 95.2% | 368,907 | 94.8% |
| 2 | 17,646 | 4.8% | 20,114 | 5.2% |
| Total | 371,061 | 100% | 389,021 | 100% |

| ONET Code | ONET Title | Job Zone ONET | FY24 | FY24% | FY25 | FY25% |
|---|---|---|---|---|---|---|
| 45-2041.00 | Graders and Sorters, Agricultural Products | 1 | 1,399 | 0.4% | 1,162 | 0.3% |
| 45-2091.00 | Agricultural Equipment Operators | 1 | 30,654 | 8.3% | 36,463 | 9.4% |
| 45-2092.00 | Farmworkers and Laborers, Crop, Nursery, and Greenhouse | 1 | 321,362 | 86.6% | 331,282 | 85.2% |
| 45-2093.00 | Farmworkers, Farm, Ranch, and Aquacultural Animals | 2 | 17,141 | 4.6% | 19,418 | 5.0% |
| 53-7064.00 | Packers and Packagers, Hand | 2 | 505 | 0.1% | 696 | 0.2% |
| | | Total | 371,061 | 100% | 389,021 | 100% |

This overwhelming presence of Job Zone 1 occupations conforms to the 2010 - 2011 DOL analysis for the H-2B program. The effect of the October 2025 IFR is to establish a combined SOC code rate which has an adverse impact on U.S. workers.

## III.  **Reduced H-2A AEWR Wage Rates Have a Direct Impact on U.S. Workers**

The reduction in the Adverse Effect Wage Rate (AEWR) required to be offered by employers participating in the H-2A program for the five combined wage SOC Codes to an amount significantly below the average wage identified by both the USDA Farm Labor Survey and the Bureau of Labor Statistics OEWS survey **has a direct adverse impact** on U.S. workers employed in corresponding employment by H-2A workers.

Although the October 2025 Interim Final Rule indicates that DOL denies a relatively small number of employer requests for H-2A labor certification as a result of referrals from State Workforce Agencies (SWA's) of workers applying

13

for H-2A positions,[2] that data ignores that H-2A employers identify significant numbers of non-H-2A workers in corresponding employment that they intend to employ independently of the request for labor certification.

OFLC Performance data website data file H-2A_Disclosure_Data_FY2024.xlsx for the H-2A program for 2024 contains data fields explained at H-2A_Record_Layout_FY2024.pdf. The data files include the following fields:

| FIELD | DESCRIPTION |
| --- | --- |
| TOTAL_WORKERS_NEEDED | Total number of US and H-2A full-time workers needed to perform the agricultural services or labor. Form ETA-790A, Section A, Item 2a. |
| TOTAL_WORKERS_H-2A_REQUESTED | Total number of H-2A workers requested by the Employer(s). Form ETA- 790A, Section A, Item 2b. |
| TOTAL_WORKERS_H-2A_CERTIFIED | Total number of H-2A workers certified by the ETA National Processing Center. |

Subtracting the number of H-2A workers requested from the number of Total Workers Needed shows that the H-2A employers anticipate employing 91,895 U.S. workers.

| Cases | CASE NUMBER | TOTAL WORKERS NEEDED | Total US Workers Needed | TOTAL WORKERS H2A REQUESTED | TOTAL WORKERS H2A CERTIFIED |
| --- | --- | --- | --- | --- | --- |
| 22,172 | Total Cases | 476,915 | 91,895 | 385,020 | 384,865 |

It should be noted that this total excludes cases in which employers withdrew applications for H-2A labor certification and presumably identified other workers within the U.S. to employ.

CATA historical roots included amongst its members significant numbers of Puerto Rican U.S. citizens who seasonally migrated to employment with H-2 and other agricultural employers in the Eastern U.S. In 1977 the United States Court of Appeals for the First Circuit upheld the right of the U.S. Secretary of Labor to treat Puerto Rican workers seeking employment with H-2 employers as unavailable for positions for which employers sought foreign H-2 workers, because Puerto Rican law authorized the Secretary of Labor of Puerto Rico to require employers seeking Puerto Rican workers to enter into agreements protecting basic employment rights. *See*, *Hernandez Flecha v. Quiros*, 567 F. 2d 1154 (1st Cir 1977). This holding has the effect of allowing H-2A employers to refuse employment to U.S. workers who

---

[2] *See*, 90 F*ed Reg* 47,914 at 47,922 (Oct. 2, 2025)

condition their applications for employment on being paid higher wages than H-2A employers are **required** by DOL to offer.

## IV.    **Effect of Skill Level Reduction of BLS OEWS Average Wage**

The table below identifies the effect on U.S. workers of the arbitrary "skill level" reduction to the OES average wage for workers in the five combined SOC codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064.

| Combined SOC Codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064 | | | | | | |
|---|---|---|---|---|---|---|
| # | ST | State | OEWS Avg Wage | Skill level I (entry-level) | Below OES Avg Wage | % Below OES Avg |
| 1 | AL | Alabama | $14.95 | $11.25 | $3.70 | 24.7% |
| 2 | AK | Alaska | $20.01 | $14.79 | $5.22 | 26.1% |
| 3 | AZ | Arizona | $18.01 | $15.32 | $2.69 | 14.9% |
| 4 | AR | Arkansas | $16.18 | $13.40 | $2.78 | 17.2% |
| 5 | CA | California | $18.71 | $16.45 | $2.26 | 12.1% |
| 6 | CO | Colorado | $20.02 | $16.28 | $3.74 | 18.7% |
| 7 | CT | Connecticut | $18.20 | $15.93 | $2.27 | 12.5% |
| 8 | DE | Delaware | $19.63 | $14.61 | $5.02 | 25.6% |
| 9 | DC | District of Columbia | $23.80 | $17.47 | $6.33 | 26.6% |
| 10 | FL | Florida | $15.06 | $12.47 | $2.59 | 17.2% |
| 11 | GA | Georgia | $16.22 | $12.27 | $3.95 | 24.4% |
| 12 | GU | Guam | $10.89 | $9.70 | $1.19 | 10.9% |
| 13 | HI | Hawaii | $18.49 | $14.36 | $4.13 | 22.3% |
| 14 | ID | Idaho | $17.07 | $12.92 | $4.15 | 24.3% |
| 15 | IL | Illinois | $18.75 | $15.48 | $3.27 | 17.4% |
| 16 | IN | Indiana | $19.22 | $14.93 | $4.29 | 22.3% |
| 17 | IA | Iowa | $18.87 | $14.20 | $4.67 | 24.7% |
| 18 | KS | Kansas | $18.14 | $12.69 | $5.45 | 30.0% |
| 19 | KY | Kentucky | $17.99 | $13.94 | $4.05 | 22.5% |
| 20 | LA | Louisiana | $14.84 | $9.59 | $5.25 | 35.4% |
| 21 | ME | Maine | $18.95 | $14.81 | $4.14 | 21.8% |
| 22 | MD | Maryland | $18.21 | $15.35 | $2.86 | 15.7% |
| 23 | MA | Massachusetts | $17.57 | $15.29 | $2.28 | 13.0% |
| 24 | MI | Michigan | $17.47 | $13.78 | $3.69 | 21.1% |
| 25 | MN | Minnesota | $19.33 | $14.60 | $4.73 | 24.5% |
| 26 | MS | Mississippi | $14.92 | $9.74 | $5.18 | 34.7% |
| 27 | MO | Missouri | $18.74 | $14.56 | $4.18 | 22.3% |
| 28 | MT | Montana | $18.48 | $13.03 | $5.45 | 29.5% |
| 29 | NE | Nebraska | $19.26 | $14.20 | $5.06 | 26.3% |
| 30 | NV | Nevada | $18.40 | $14.54 | $3.86 | 21.0% |
| 31 | NH | New Hampshire | $16.14 | $13.99 | $2.15 | 13.3% |

| Combined SOC Codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064 | | | | | | |
|---|---|---|---|---|---|---|
| # | ST | State | OEWS Avg Wage | Skill level I (entry-level) | Below OES Avg Wage | % Below OES Avg |
| 32 | NJ | New Jersey | $19.41 | $16.05 | $3.36 | 17.3% |
| 33 | NM | New Mexico | $16.20 | $12.51 | $3.69 | 22.8% |
| 34 | NY | New York | $18.75 | $15.68 | $3.07 | 16.4% |
| 35 | NC | North Carolina | $16.39 | $12.78 | $3.61 | 22.0% |
| 36 | ND | North Dakota | $18.98 | $12.31 | $6.67 | 35.1% |
| 37 | OH | Ohio | $18.11 | $14.38 | $3.73 | 20.6% |
| 38 | OK | Oklahoma | $16.01 | $11.27 | $4.74 | 29.6% |
| 39 | OR | Oregon | $17.62 | $15.25 | $2.37 | 13.5% |
| 40 | PA | Pennsylvania | $17.99 | $13.88 | $4.11 | 22.8% |
| 41 | PR | Puerto Rico | $10.37 | $9.50 | $0.87 | 8.4% |
| 42 | RI | Rhode Island | $17.17 | $14.15 | $3.02 | 17.6% |
| 43 | SC | South Carolina | $15.92 | $12.14 | $3.78 | 23.7% |
| 44 | SD | South Dakota | $17.48 | $13.19 | $4.29 | 24.5% |
| 45 | TN | Tennessee | $16.64 | $12.44 | $4.20 | 25.2% |
| 46 | TX | Texas | $15.67 | $11.81 | $3.86 | 24.6% |
| 47 | UT | Utah | $16.86 | $12.48 | $4.38 | 26.0% |
| 48 | VT | Vermont | $19.23 | $15.96 | $3.27 | 17.0% |
| 49 | VI | Virgin Islands | $14.34 | $10.98 | $3.36 | 23.4% |
| 50 | VA | Virginia | $18.40 | $13.90 | $4.50 | 24.5% |
| 51 | WA | Washington | $19.00 | $16.53 | $2.47 | 13.0% |
| 52 | WV | West Virginia | $16.15 | $12.00 | $4.15 | 25.7% |
| 53 | WI | Wisconsin | $18.22 | $13.29 | $4.93 | 27.1% |
| 54 | WY | Wyoming | $17.23 | $11.34 | $5.89 | 34.2% |

## V.     Reduction in Wage Rate for H-2A Workers for Employer Provided Housing

The Farmworker Justice comments which CATA is joining in discuss this issue extensively and those comments are incorporated herein. See also an important blog post by the Economic Policy Institute including an extensive discussion of this issue.[3]

---

[3] CATA and its counsel have worked closely with the Economic Policy Institute staff for 20 years.  It is possible that the EPI analysis calculations fail to recognize gaps in many state minimum wage laws for farmworker coverage (including New Jersey) and that the economic loss to farmworkers may be even greater in those states.

**Trump's new H-2A wage rule will radically cut the wages of all farmworkers:** *New estimates show farmworkers stand to lose $4.4 to $5.4 billion annually under DOL's updated Adverse Effect Wage Rate.*  Available at:

https://www.epi.org/blog/trumps-new-h-2a-wage-rule-will-radically-cut-the-wages-of-all-farmworkers-new-estimates-show-farmworkers-stand-to-lose-4-4-to-5-4-billion-annually-under-dols-updated-adverse-effec/

It is possible to directly estimate the impact on workers by calculating the number of H-2A workers employed on each job order by employers, times the hourly reduction in H-2A worker wage rates, times the number of hours of work by those workers.  DOL disclosure data for the H-2A program, includes information on the hours of work that employers disclose will be offered to H-2A workers. However, it is likely in many cases that the employer estimates of hours of work will understate the hours which workers may actually work in many weeks.  The reduced wages received by H-2A workers will likely make such workers eager to work as many hours as possible.

As the Farmworker Justice comments clearly illustrate, the DOL basis for calculation of the value of employer provided housing to H-2A workers in most cases is a totally inappropriate mechanism for calculating the value of that housing. This is particularly true where workers in fact work 50 or more hours in a work week.  DOL has long recognized that the protected wage rates established under the H-2 programs are the functional equivalent of minimum wage rates and should therefore be judged under the actual and reasonable cost standards applied under the Fair Labor Standards Act if any housing cost reduction (deduction) is permitted.  Employers should have to establish that housing is offered in compliance with law and that they are not making a profit from the amount charged for housing.  DOL appears to be acting as if the treatment of these costs as a reduction in wages rather than a deduction should insulate employers from compliance with these tests.

The reduced wages paid to H-2A workers has a direct competitive impact on U.S. workers as well, since it will increase the economic incentives for employers to prefer foreign temporary H-2A workers over workers present in the U.S.

17

Examination of the amounts to be received by employers is particularly significant in the case of large employers including farm labor contractor employers. An examination by Justice at Work Pennsylvania of 2024 H-2A disclosure data included the following data about farm labor contractors.

FY2024 H-2A Farm Labor Contractors

| Rank | FLC Employer | FLC Certificate Number | Emp FEIN | Workers | ER ST | Work States |
|---|---|---|---|---|---|---|
| | **Sub-Total** 32 Farm Labor Contractors More than 1,000 Workers | | | 75,625 | | 35 |
| | **Sub-Total** 1,117 other Farm Labor Contractors | | | 112,936 | | 46 |
| | **Total** 1,149 H-2A Farm Labor Contractors | | | 178,816 | | 48 |
| 1 | FOOTHILL PACKING, INC. | FLC-R-WE-CA-20189290-0725 | 77-0314932 | 6,433 | CA | 3 |
| 2 | FRESH HARVEST, INC. | FLC-I-WE-CA-34176551-1025 | 86-0772971 | 5,140 | CA | 4 |
| 3 | TEMP LABOR, LLC. | FLC-R-SE-FL-58184600-0626 | 46-3062820 | 3,324 | FL | 1 |
| 4 | ELKHORN PACKING CO., LLC | FLC-R-WE-CA-92177929-0125 | 77-0529948 | 3,205 | CA | 2 |
| 5 | AG LABOR LLC | FLC-R-SE-FL-79159234-1224 | 46-4527497 | 3,042 | FL | 1 |
| 6 | EVERGLADES HARVESTING, INC. | FLC-R-SE-FL-98172425-1124 | 59-3132549 | 2,585 | FL | 4 |
| 7 | AGRILABOR, INC | FLC-R-WE-OR-75160387-0325 | 81-0844786 | 2,326 | OR | 3 |
| 8 | EMPIRE FARM LABOR CONTRACTOR, LLC | FLC-R-WE-CA-94198448-0926 | 81-1484686 | 2,321 | CA | 2 |
| 9 | MANZANA, LLC | FLC-I-MW-MI-71173574-1225 | 47-2259609 | 2,229 | MI | 7 |
| 10 | D&K HARVESTING, INC. | FLC-R-SE-FL-40180318-1225 | 59-2129884 | 2,198 | FL | 10 |
| 11 | ALCO HARVESTING, LLC | FLC-R-WE-CA-92156366-1124 | 45-2833889 | 2,197 | CA | 2 |
| 12 | V. VALENCIA HARVESTING, INC. | FLC-R-SE-FL-33178350-1224 | 20-1769604 | 2,080 | FL | 7 |
| 13 | ROYAL OAK AG SERVICES, INC. | FLC-I-WE-CA-78156738-1224 | 82-2949930 | 2,064 | CA | 1 |
| 14 | AG MANAGEMENT GROUP, LLC | FLC-R-WE-WA-27162092-0125 | 46-1766652 | 1,972 | WA | 1 |
| 15 | OVERLOOK HARVESTING COMPANY, LLC | FLC-R-SE-FL-55192220-1026 | 20-5399333 | 1,921 | FL | 5 |
| 16 | R & R HARVESTING, INC. | FLC-R-SE-FL-85182102-0126 | 61-1668397 | 1,901 | FL | 6 |

FY2024 H-2A Farm Labor Contractors

| Rank | FLC Employer | FLC Certificate Number | Emp FEIN | Workers | ER ST | Work States |
|---|---|---|---|---|---|---|
| 17 | PALOMA HARVESTING, INC. | FLC-R-SE-FL-78182101-0125 | 20-5833830 | 1,789 | FL | 5 |
| 18 | GARCIA'S CROP HARVESTING, LLC. | FLC-R-SE-FL-89177317-1125 | 84-4152912 | 1,776 | FL | 6 |
| 19 | THE GROWERS COMPANY, INC. | FLC-R-SE-FL-89177317-1125 | 86-0215204 | 1,751 | FL | 2 |
| 20 | DEL NORTE HARVESTING, LLC. | FLC-R-SE-SC-24156183-1224 | 84-3939978 | 1,712 | SC | 14 |
| 21 | T. BELL DETASSELING, LLC | FLC-R-MW-IA-74182457-0326 | 42-1222600 | 1,334 | IA | 6 |
| 22 | MCNEILL LABOR MANAGEMENT, INC. | FLC-R-SE-FL-19168688-0725 | 65-1110344 | 1,332 | FL | 4 |
| 23 | OVERLOOK HARVESTING MICHIGAN, LLC | FLC-R-SE-FL-38178068-0126 | 83-1647464 | 1,267 | FL | 7 |
| 24 | JVKS HARVEST SOLUTIONS, LLC. DBA AGSOCIO | FLC-R-WE-CA-88188343-0726 | 81-4602353 | 1,224 | CA | 3 |
| 25 | E BERRY HARVEST COMPANY, LLC. | FLC-R-SE-FL-51181589-0226 | 45-4516359 | 1,207 | FL | 5 |
| 26 | MARTINEZ & SONS TRUCKING, LLC. | FLC-R-SE-FL-18191382-0725 | 27-5224475 | 1,126 | FL | 4 |
| 27 | JACKSON CITRUS, INC. | FLC-R-SE-FL-35164091-0625 | 59-1512937 | 1,116 | FL | 4 |
| 28 | MARINO'S AG HARVESTING, INC. DBA RANCHO PACKING | FLC-R-WE-CA-83171716-0925 | 81-3772682 | 1,109 | CA | 1 |
| 29 | CHI EMPLOYEE BENEFIT COMPANY | FLC-R-WE-CA-44192768-0825 | 84-4578492 | 1,105 | CA | 2 |
| 30 | ADA HARVESTING, LLC | FLC-R-SE-GA-81183736-0226 | 81-4811288 | 1,070 | GA | 1 |
| 31 | PEQUENO HARVESTING, LLC. | FLC-R-SE-FL-96182750-0625 | 47-2737594 | 1,012 | FL | 5 |
| 32 | LEGACY LABOR, INC. | FLC-R-MW-MI-62156888-0125 | 84-3839457 | 1,012 | MI | 15 |

18

Employers employing more than 1,000 workers such as these labor contractors will be huge beneficiaries of the payments by H-2A workers through reduced wage rates for provision of farm housing.  It should be recognized that the principal reason for providing housing to agricultural workers by agricultural employers is the convenience to the employer of having workers readily available at the worksite on a predicable basis.

## VI.    Effect of Reduction in Wage Rate for H-2A Level 1 Workers for Employer Provided Housing

The table below identifies the effect on H-2A workers of the combination of the housing reduction in wages and the arbitrary "skill level" reduction to the OES average wage for workers in the five combined SOC codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064.

| Combined SOC Codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| # | ST | State | OEWS Avg Wage | Skill level I (entry-level) | Amount Housing adjustment | H-2A Level 1 Rate | H-2A Below OES Avg Wage | H-2A % Below OES Avg |
| 1 | AL | Alabama | $14.95 | $11.25 | ($1.20) | $10.05 | $4.90 | 32.8% |
| 2 | AK | Alaska | $20.01 | $14.79 | ($1.90) | $12.89 | $7.12 | 35.6% |
| 3 | AZ | Arizona | $18.01 | $15.32 | ($2.10) | $13.22 | $4.79 | 26.6% |
| 4 | AR | Arkansas | $16.18 | $13.40 | ($1.13) | $12.27 | $3.91 | 24.2% |
| 5 | CA | California | $18.71 | $16.45 | ($3.00) | $13.45 | $5.26 | 28.1% |
| 6 | CO | Colorado | $20.02 | $16.28 | ($2.18) | $14.10 | $5.92 | 29.6% |
| 7 | CT | Connecticut | $18.20 | $15.93 | ($2.06) | $13.87 | $4.33 | 23.8% |
| 8 | DE | Delaware | $19.63 | $14.61 | ($1.85) | $12.76 | $6.87 | 35.0% |
| 9 | DC | District of Columbia | $23.80 | $17.47 | ($2.64) | $14.83 | $8.97 | 37.7% |
| 10 | FL | Florida | $15.06 | $12.47 | ($2.29) | $10.18 | $4.88 | 32.4% |
| 11 | GA | Georgia | $16.22 | $12.27 | ($1.75) | $10.52 | $5.70 | 35.1% |
| 12 | GU | Guam | $10.89 | $9.70 | ($2.35) | $7.35 | $3.54 | 32.5% |
| 13 | HI | Hawaii | $18.49 | $14.36 | ($3.18) | $11.18 | $7.31 | 39.5% |
| 14 | ID | Idaho | $17.07 | $12.92 | ($1.84) | $11.08 | $5.99 | 35.1% |
| 15 | IL | Illinois | $18.75 | $15.48 | ($1.79) | $13.69 | $5.06 | 27.0% |
| 16 | IN | Indiana | $19.22 | $14.93 | ($1.27) | $13.66 | $5.56 | 28.9% |
| 17 | IA | Iowa | $18.87 | $14.20 | ($1.15) | $13.05 | $5.82 | 30.8% |
| 18 | KS | Kansas | $18.14 | $12.69 | ($1.26) | $11.43 | $6.71 | 37.0% |
| 19 | KY | Kentucky | $17.99 | $13.94 | ($1.24) | $12.70 | $5.29 | 29.4% |

19

| Combined SOC Codes: 45-2041, 45-2091, 45-2092, 45-2093, 53-7064 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| # | ST | State | OEWS Avg Wage | Skill level I (entry-level) | Amount Housing adjustment | H-2A Level 1 Rate | H-2A Below OES Avg Wage | H-2A % Below OES Avg |
| 20 | LA | Louisiana | $14.84 | $9.59 | ($1.35) | $8.24 | $6.60 | 44.5% |
| 21 | ME | Maine | $18.95 | $14.81 | ($1.60) | $13.21 | $5.74 | 30.3% |
| 22 | MD | Maryland | $18.21 | $15.35 | ($2.31) | $13.04 | $5.17 | 28.4% |
| 23 | MA | Massachusetts | $17.57 | $15.29 | ($2.42) | $12.87 | $4.70 | 26.8% |
| 24 | MI | Michigan | $17.47 | $13.78 | ($1.32) | $12.46 | $5.01 | 28.7% |
| 25 | MN | Minnesota | $19.33 | $14.60 | ($1.68) | $12.92 | $6.41 | 33.2% |
| 26 | MS | Mississippi | $14.92 | $9.74 | ($1.15) | $8.59 | $6.33 | 42.4% |
| 27 | MO | Missouri | $18.74 | $14.56 | ($1.28) | $13.28 | $5.46 | 29.1% |
| 28 | MT | Montana | $18.48 | $13.03 | ($1.80) | $11.23 | $7.25 | 39.2% |
| 29 | NE | Nebraska | $19.26 | $14.20 | ($1.24) | $12.96 | $6.30 | 32.7% |
| 30 | NV | Nevada | $18.40 | $14.54 | ($2.15) | $12.39 | $6.01 | 32.7% |
| 31 | NH | New Hampshire | $16.14 | $13.99 | ($1.96) | $12.03 | $4.11 | 25.5% |
| 32 | NJ | New Jersey | $19.41 | $16.05 | ($2.28) | $13.77 | $5.64 | 29.1% |
| 33 | NM | New Mexico | $16.20 | $12.51 | ($1.44) | $11.07 | $5.13 | 31.7% |
| 34 | NY | New York | $18.75 | $15.68 | ($2.40) | $13.28 | $5.47 | 29.2% |
| 35 | NC | North Carolina | $16.39 | $12.78 | ($1.69) | $11.09 | $5.30 | 32.3% |
| 36 | ND | North Dakota | $18.98 | $12.31 | ($1.27) | $11.04 | $7.94 | 41.8% |
| 37 | OH | Ohio | $18.11 | $14.38 | ($1.23) | $13.15 | $4.96 | 27.4% |
| 38 | OK | Oklahoma | $16.01 | $11.27 | ($1.22) | $10.05 | $5.96 | 37.2% |
| 39 | OR | Oregon | $17.62 | $15.25 | ($2.11) | $13.14 | $4.48 | 25.4% |
| 40 | PA | Pennsylvania | $17.99 | $13.88 | ($1.52) | $12.36 | $5.63 | 31.3% |
| 41 | PR | Puerto Rico | $10.37 | $9.50 | ($0.71) | $8.79 | $1.58 | 15.2% |
| 42 | RI | Rhode Island | $17.17 | $14.15 | ($1.87) | $12.28 | $4.89 | 28.5% |
| 43 | SC | South Carolina | $15.92 | $12.14 | ($1.54) | $10.60 | $5.32 | 33.4% |
| 44 | SD | South Dakota | $17.48 | $13.19 | ($1.20) | $11.99 | $5.49 | 31.4% |
| 45 | TN | Tennessee | $16.64 | $12.44 | ($1.60) | $10.84 | $5.80 | 34.9% |
| 46 | TX | Texas | $15.67 | $11.81 | ($1.84) | $9.97 | $5.70 | 36.4% |
| 47 | UT | Utah | $16.86 | $12.48 | ($1.84) | $10.64 | $6.22 | 36.9% |
| 48 | VT | Vermont | $19.23 | $15.96 | ($1.61) | $14.35 | $4.88 | 25.4% |
| 49 | VI | Virgin Islands | $14.34 | $10.98 | ($1.59) | $9.39 | $4.95 | 34.5% |
| 50 | VA | Virginia | $18.40 | $13.90 | ($2.08) | $11.82 | $6.58 | 35.8% |
| 51 | WA | Washington | $19.00 | $16.53 | ($2.49) | $14.04 | $4.96 | 26.1% |
| 52 | WV | West Virginia | $16.15 | $12.00 | ($1.12) | $10.88 | $5.27 | 32.6% |
| 53 | WI | Wisconsin | $18.22 | $13.29 | ($1.29) | $12.00 | $6.22 | 34.1% |
| 54 | WY | Wyoming | $17.23 | $11.34 | ($1.32) | $10.02 | $7.21 | 41.8% |

The economic impact on H-2A workers weekly wages will vary greatly both by the state in which they work and the number of hours of work. The chart below shows the impact on H-2A workers weekly wages of the housing charges at 50 hours of work in a week and at 60 hours of work in a week.

| # | ST | State | Amount Housing Adjustment | Weekly @ 50 Hours | Weekly @ 60 Hours |
|---|----|----|----|----|----|
| 1 | AL | Alabama | ($1.20) | ($60.00) | ($72.00) |
| 2 | AK | Alaska | ($1.90) | ($95.00) | ($114.00) |
| 3 | AZ | Arizona | ($2.10) | ($105.00) | ($126.00) |
| 4 | AR | Arkansas | ($1.13) | ($56.50) | ($67.80) |
| 5 | CA | California | ($3.00) | ($150.00) | ($180.00) |
| 6 | CO | Colorado | ($2.18) | ($109.00) | ($130.80) |
| 7 | CT | Connecticut | ($2.06) | ($103.00) | ($123.60) |
| 8 | DE | Delaware | ($1.85) | ($92.50) | ($111.00) |
| 9 | DC | District of Columbia | ($2.64) | ($132.00) | ($158.40) |
| 10 | FL | Florida | ($2.29) | ($114.50) | ($137.40) |
| 11 | GA | Georgia | ($1.75) | ($87.50) | ($105.00) |
| 12 | GU | Guam | ($2.35) | ($117.50) | ($141.00) |
| 13 | HI | Hawaii | ($3.18) | ($159.00) | ($190.80) |
| 14 | ID | Idaho | ($1.84) | ($92.00) | ($110.40) |
| 15 | IL | Illinois | ($1.79) | ($89.50) | ($107.40) |
| 16 | IN | Indiana | ($1.27) | ($63.50) | ($76.20) |
| 17 | IA | Iowa | ($1.15) | ($57.50) | ($69.00) |
| 18 | KS | Kansas | ($1.26) | ($63.00) | ($75.60) |
| 19 | KY | Kentucky | ($1.24) | ($62.00) | ($74.40) |
| 20 | LA | Louisiana | ($1.35) | ($67.50) | ($81.00) |
| 21 | ME | Maine | ($1.60) | ($80.00) | ($96.00) |
| 22 | MD | Maryland | ($2.31) | ($115.50) | ($138.60) |
| 23 | MA | Massachusetts | ($2.42) | ($121.00) | ($145.20) |
| 24 | MI | Michigan | ($1.32) | ($66.00) | ($79.20) |
| 25 | MN | Minnesota | ($1.68) | ($84.00) | ($100.80) |
| 26 | MS | Mississippi | ($1.15) | ($57.50) | ($69.00) |
| 27 | MO | Missouri | ($1.28) | ($64.00) | ($76.80) |
| 28 | MT | Montana | ($1.80) | ($90.00) | ($108.00) |
| 29 | NE | Nebraska | ($1.24) | ($62.00) | ($74.40) |
| 30 | NV | Nevada | ($2.15) | ($107.50) | ($129.00) |
| 31 | NH | New Hampshire | ($1.96) | ($98.00) | ($117.60) |
| 32 | NJ | New Jersey | ($2.28) | ($114.00) | ($136.80) |
| 33 | NM | New Mexico | ($1.44) | ($72.00) | ($86.40) |

21

| # | ST | State | Amount Housing Adjustment | Weekly @ 50 Hours | Weekly @ 60 Hours |
|---|----|-------|---------------------------|-------------------|-------------------|
| 34 | NY | New York | ($2.40) | ($120.00) | ($144.00) |
| 35 | NC | North Carolina | ($1.69) | ($84.50) | ($101.40) |
| 36 | ND | North Dakota | ($1.27) | ($63.50) | ($76.20) |
| 37 | OH | Ohio | ($1.23) | ($61.50) | ($73.80) |
| 38 | OK | Oklahoma | ($1.22) | ($61.00) | ($73.20) |
| 39 | OR | Oregon | ($2.11) | ($105.50) | ($126.60) |
| 40 | PA | Pennsylvania | ($1.52) | ($76.00) | ($91.20) |
| 41 | PR | Puerto Rico | ($0.71) | ($35.50) | ($42.60) |
| 42 | RI | Rhode Island | ($1.87) | ($93.50) | ($112.20) |
| 43 | SC | South Carolina | ($1.54) | ($77.00) | ($92.40) |
| 44 | SD | South Dakota | ($1.20) | ($60.00) | ($72.00) |
| 45 | TN | Tennessee | ($1.60) | ($80.00) | ($96.00) |
| 46 | TX | Texas | ($1.84) | ($92.00) | ($110.40) |
| 47 | UT | Utah | ($1.84) | ($92.00) | ($110.40) |
| 48 | VT | Vermont | ($1.61) | ($80.50) | ($96.60) |
| 49 | VI | Virgin Islands | ($1.59) | ($79.50) | ($95.40) |
| 50 | VA | Virginia | ($2.08) | ($104.00) | ($124.80) |
| 51 | WA | Washington | ($2.49) | ($124.50) | ($149.40) |
| 52 | WV | West Virginia | ($1.12) | ($56.00) | ($67.20) |
| 53 | WI | Wisconsin | ($1.29) | ($64.50) | ($77.40) |
| 54 | WY | Wyoming | ($1.32) | ($66.00) | ($79.20) |

## VII. Payment for H-2A Workers Performing Job Duties Outside of the Combined SOC Codes

The cap on the availability of visas under the non-agricultural H-2B program has for many years provided an incentive for employers to classify workers as agricultural subject to the H-2A program, rather than as non-agricultural subject to the H-2B program.

Under the H-2B program and every other DOL foreign labor wage rate determination program, the wage rates for jobs are based on the SOC code with duties performed by the temporary foreign worker. This has been DOL policy for many years. *See* the current version of that long established policy at: Employment and Training Administration, Prevailing Wage Determination Policy Guidance, Nonagricultural Immigration Programs, Revised November 2009.

22

That policy at page 4 states:

"*Nature of the Job Offer*"

In determining the *nature of the job offer*, the first order is to review the requirements of the employer's job offer and determine the appropriate occupational classification. The O*NET description that corresponds to the employer's job offer shall be used to identify the appropriate occupational classification. The NPWHC can identify the appropriate O*NET occupation using O*NET OnLine (http://online.onetcenter.org/) and entering the employer's job title to search for the appropriate O*NET-SOC occupation and code.

If the employer's prevailing wage request contains only a code from the Dictionary of Occupational Titles (DOT) rather than a job title, the DOT to O*NET-SOC crosswalk found on the On-Line Wage Library shall be used to identify the related O*NET-SOC code.

If the employer's job opportunity has worker requirements described in a combination of O*NET occupations, the NPWHC should default directly to the relevant O*NET-SOC occupational code for the highest paying occupation. For example, if the employer's job offer is for an engineer-pilot, the NPWHC shall use the education, skill and experience levels for the higher paying occupation when making the wage level determination.

The rationale behind this long-established policy is that a U.S. worker with the occupational skills sufficient to perform the duties in a higher paid occupational code can only be expected to accept a job offer if they are offered a market rate of pay commensurate with the skills for the job.

Examination of DOL H-2A disclosure date for FY2024 and FY2025 jobs reflects the following significant SOC codes outside of the 5 combined SOC Codes.

| # | SOC | SOC Title | FY2025 | FY2024 | FY24-25 |
|---|-----|-----------|--------|--------|---------|
| 1 | 53-3032 | Heavy and Tractor-Trailer Truck Drivers | 7,340 | 8,234 | 15,574 |
| 2 | 53-3053 | Shuttle Drivers and Chauffeurs | 2,975 | 2,169 | 5,144 |
| 3 | 47-2061 | Construction Laborers | 2,714 | 2,365 | 5,079 |
| 4 | 47-3012 | Helpers--Carpenters | 679 | 296 | 975 |
| 5 | 49-9098 | Helpers--Installation, Maintenance, and Repair Workers | 652 | 569 | 1,221 |
| 6 | 49-3041 | Farm Equipment Mechanics and Service Technicians | 630 | 427 | 1,057 |
| 7 | 45-1011 | First-Line Supervisors of Farming, Fishing, and Forestry Workers | 493 | 469 | 962 |

| # | SOC | SOC Title | FY2025 | FY2024 | FY24-25 |
|---|---|---|---|---|---|
| 8 | 53-3033 | Light Truck Drivers | 383 | 204 | 587 |
| 9 | 35-2012 | Cooks, Institution and Cafeteria | 358 | 220 | 578 |
| 10 | 47-3019 | Helpers, Construction Trades, All Other | 238 | 105 | 343 |
| 11 | 11-9013 | Farmers, Ranchers, and Other Agricultural Managers | 151 | 11 | 162 |
| 12 | 47-4031 | Fence Erectors | 127 | 138 | 265 |
| 13 | 51-3022 | Meat, Poultry, and Fish Cutters and Trimmers | 99 | 151 | 250 |
| 14 | 49-9071 | Maintenance and Repair Workers, General | 98 | 96 | 194 |
| 15 | 35-2021 | Food Preparation Workers | 97 | 85 | 182 |
| 16 | 45-4022 | Logging Equipment Operators | 93 | 79 | 172 |
| 17 | 51-9198 | Helpers--Production Workers | 76 | 54 | 130 |
| 18 | 53-3052 | Bus Drivers, Transit and Intercity | 59 | 126 | 185 |
| 19 | 53-7062 | Laborers and Freight, Stock, and Material Movers, Hand | 45 | 50 | 95 |
| 20 | 45-2099 | Agricultural Workers, All Other | 44 | 59 | 103 |
| 21 | 51-3023 | Slaughterers and Meat Packers | 42 | 17 | 59 |
| 22 | 37-2012 | Maids and Housekeeping Cleaners | 42 | 20 | 62 |
| 23 | 45-2011 | Agricultural Inspectors | 32 | 18 | 50 |
| 24 | 37-3012 | Pesticide Handlers, Sprayers, and Applicators, Vegetation | 24 | 283 | 307 |
| 25 | 51-3021 | Butchers and Meat Cutters | 24 | 21 | 45 |
| 26 | 53-6032 | Aircraft Service Attendants | 24 | 14 | 38 |
| 27 | 47-3013 | Helpers--Electricians | 20 | 16 | 36 |
| 28 | 53-7061 | Cleaners of Vehicles and Equipment | 20 | 33 | 53 |
| 29 | 13-1074 | Farm Labor Contractors | 14 | 630 | 644 |
| 30 | 39-2011 | Animal Trainers | 11 | 19 | 30 |
| 32 | 49-9095 | Manufactured Building and Mobile Home Installers | 0 | 94 | 94 |
| | Total | | 17,604 | 17,072 | 34,676 |

As a threshold matter it is important that DOL prevent H-2A employers for seeking to identify SOC codes with lower OEWS wage rates in particular areas and seeking to classify H-2A workers under such lower paid SOC

24

codes so as to avoid paying the general Adverse Effect Wage Rate for H-2A agricultural workers.

However, the IFR provisions allowing employers to pay lower combined SOC Code wages for OES codes with significantly higher wage rates provided the employers assert those individuals spend less than 50% if their time in those lower paid job duties will have a clear adverse impact on U.S. workers who might accept positions with those employers if they were paid appropriate market wage rates.

Consistent with long established DOL policy for all foreign labor programs, H-2A employers should have to pay wage rates based on the highest paid occupational code of the job duties of the position.[4]

## VIII.  Resumption of the Farm Labor Survey and Future Transition to BLS OES Wage Surveys

The unjustified discontinuance of the Farm Labor Survey without having provided sufficient time, resources, and training for the Bureau of Labor Statistics to undertake a full-scale assessment of agricultural employer wage rates is totally improper.  The IFR itself will result in reduced wage rates for future wage surveys if its disastrous reduction in wage rates is not reversed. It is clear that in the current fiscal environment, it is exceptionally unlikely that BLS will have the capacity to adequately assess and survey farm labor wage rates paid by agricultural employers rather than labor contractors.

In the interim, the wage rates from prior USDA Farm Labor Surveys have consistently demonstrated an increase in wage rates rather than the drastic wage reductions provided for under the IFR.

USDA Farm Labor Survey data is available from USDA.  See:
https://quickstats.nass.usda.gov/results/25AE1A01-3221-312B-BEA6-58DD71F51F49

A review of the data for the period 2018-2024 reflects a consistent increase in wage rates at a national level.  That data suggests that a 5.29% increase over the 2024 survey data would be a likely appropriate temporary increase over the 2024 data used to establish the initial 2025 AEWR wage rates. The USDA data for that period reflects the following:

---

[4] Although it would be inappropriate in terms of established DOL policy for foreign labor programs, DOL should at a minimum require the payment of higher occupational wage rates for hours of work performed in positions outside of the worker's primary job duties.  This would only be acceptable under circumstances where such job duties were performed on only an occasional and insubstantial basis.

| Program | Year | Period | Geo Level | Commodity | Data Item | Value | Percent Increase |
|---|---|---|---|---|---|---|---|
| | | | | | **Average increase 2018-2024 =** | | 5.29% |
| SURVEY | 2024 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $19.10 | 3.08% |
| SURVEY | 2023 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $18.53 | 5.52% |
| SURVEY | 2022 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $17.56 | 7.20% |
| SURVEY | 2021 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $16.38 | 5.75% |
| SURVEY | 2020 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $15.49 | 3.89% |
| SURVEY | 2019 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $14.91 | 5.22% |
| SURVEY | 2018 | YEAR | NATIONAL | LABOR | LABOR, HIRED - WAGE RATE, MEASURED IN $ / HOUR | $14.17 | 6.38% |

## IX.    Recommended Action

DOL should vacate the IFR and take interim steps to adjust the 2026 H-2A wage rates appropriately while re-opening a new comment period after proposing procedures that protect workers against the adverse effects of changes in the H-2A program.