Kuntal Cholera*
Tom Plotkin*
Mark Andrews-Lee*
Christina Coleburn*
Lindsay Williams*
Sela Carrington**
COVINGTON & BURLING LLP
850 Tenth Street NW
Washington, DC 20001
kcholera@cov.com
*Admitted pro hac vice
**Pro hac vice application forthcoming

*Attorneys for Plaintiffs*

*(additional counsel listed on signature page)*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

UNITED FARM WORKERS, *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF LABOR;

KEITH E. SONDERLING, in his official capacity as Acting Secretary of Labor;

LORI FRAZIER BEARDEN, in her official capacity as Acting Assistant Secretary for Employment and Training

Defendants.

Civil Case No.: 1:25-cv-1614

**JOINT STATUS REPORT PURSUANT TO COURT ORDER (ECF NO. 103)**

Pursuant to this Court's September 17, 2026 Order, the parties respectfully submit this Joint Status Report. *See* ECF No. 103 at 3.

In its Order filed August 26, 2026, the Court held the 2025 interim final rule ("2025 IFR") unlawful, without vacating it. ECF No. 99 at 27-28.[1] The Court ordered Defendants, on remand, "to promptly produce a new methodology for calculating Adverse Effect Wage Rates ('AEWRs') for H-2A workers that is consistent with [its] Order, and to promptly publish new AEWRs under that methodology." *Id*. at 28. The Court also retained jurisdiction and directed the parties to submit an initial status report within two weeks detailing Defendants' initial steps toward producing the new methodology, their anticipated timeline for its issuance, and the parties' proposed schedule for further status reports. *Id*.

In its September 17 Order, the Court explained that remand without immediate vacatur had anticipated that the Department of Labor ("DOL" or "the Department") would promptly produce a new interim methodology consistent with the August 26 Order, pending issuance of a final rule. ECF No. 103 at 2. The Court directed the parties to file this further report by September 28, 2026, addressing two issues: (1) "the appropriate additional timeline for the Department of Labor to promptly issue a new interim methodology consistent with the [Court's August 26, 2026 Order], pending the ultimate issuance of a final rule"; and (2) "whether the IFR should be vacated prior to or upon the issuance of such new interim methodology." *Id*. at 3.

The Parties set forth their status updates below.

## I. Department of Labor's Entry

As an initial matter, DOL respectfully clarifies its prior position concerning vacatur. In the September 9, 2026 Joint Status Report, DOL identified the risk of further litigation challenging whether the Department had good cause to issue another interim final rule and explained why it then favored proceeding directly to a final rule. *See* ECF No. 102 at 4. DOL did not contend in the prior Joint Status Report that the continued existence of the current IFR legally precludes or prevents the Department from promulgating a replacement interim final rule, nor did DOL contend that the existing IFR must be vacated

[1] For clarity, the 2025 IFR was published and became effective on October 2, 2025. 90 Fed. Reg. 47914, 47920 (Oct. 2, 2025).

before a replacement rule may take effect. Rather, DOL identified the risk of litigation asserting that the Department lacked good cause to issue a second IFR and suggested that proceeding to finalize the current IFR would mitigate that risk. DOL does not support or request vacatur of the 2025 IFR, either before or upon issuance of the replacement interim methodology. As such, DOL does not now ask the Court to vacate the 2025 IFR. Upon the effective date of a replacement IFR, that rule would supersede the existing IFR. The Department therefore does not believe prior or separate vacatur is necessary or helpful in accomplishing what this Court and the Department seeks—promulgation of a replacement interim methodology and avoiding unnecessary disruptions to the program and the regulated community.

With respect to the form and timing of a new AEWR rulemaking, it is relevant to note up front that upon receipt of the Court's August 26, 2026 Order, the Department believed it to be within the confines of the Court's Order and most prudent to continue to proceed directly to the promulgation of a final rule—a more comprehensive rulemaking process that was already underway and would take into account the comments received from the regulated community as well as this Court's August 26, 2026 Order. However, in response to the Court's September 17, 2026 Order and in recognition of the Court's stated concerns, the Department has reconsidered its previously proposed approach. To provide the new interim methodology contemplated by the Court, the Department will proceed with a new interim final rule ("IFR II") and proposes the accelerated schedule set forth below.

DOL will make every effort to complete development, drafting, and initial internal clearance of IFR II within approximately three months of the October 1, 2026 status conference, and sooner if practicable. During the initial three-month period, DOL expects to conduct the data and alternatives analyses required to address the Court's Order; develop the IFR II methodology and regulatory impact analysis; draft the regulatory text and preamble; and complete initial Departmental legal, economic, and policy review. For the reasons discussed below, the Department estimates that *up to* three additional months may be necessary to complete the statutorily prescribed H-2A consultation and approval process and applicable Office of Information and Regulatory Affairs ("OIRA") review, including any revisions necessary to complete those processes. Accordingly, DOL estimates that it can issue the replacement IFR within *up to* six months of the October 1 status conference. DOL will work to complete each stage as

expeditiously as practicable and will issue the replacement IFR sooner if the necessary work, review, and approvals can be completed before the end of that period.

The proposed schedule is necessary and intended to accommodate the required review and approval processes. However, to the extent practicable, DOL will coordinate with the relevant reviewing outside agencies during development of the replacement IFR and pursue concurrent consultation and review where possible. The Department will also work to seek expedited OIRA consideration of the replacement IFR.

The H-2A consultation and approval process is relatively unique and required by statute. Section 301(e) of the Immigration Reform and Control Act of 1986 ("IRCA") provides that the Attorney General, "in consultation with the Secretary of Labor and the Secretary of Agriculture, shall approve all regulations" implementing the H-2A provisions. *See* Pub. L. No. 99-603, tit. III, § 301(e), 100 Stat. 3359, 3416 (1986), as amended, codified at 8 U.S.C. § 1188 note. Following the transfer of the relevant immigration functions, that approval authority is exercised by the Secretary of Homeland Security. *See* 6 U.S.C. §§ 202(3)-(4), 251, 271(b), 291, 551(d)(2), 557; 8 U.S.C. § 1103(c) (2000). The 2025 IFR itself followed this process. *See* 90 Fed. Reg. 47914, 47951 (Oct. 2, 2025). Accordingly, issuance of the replacement IFR must accommodate DHS approval and the statutorily prescribed consultation process with DOL and the United States Department of Agriculture.

Furthermore, as described in the September 9, 2026 JSR, IFR II must also accommodate applicable OIRA review. The 2025 IFR was designated a significant regulatory action and underwent OIRA review. *See* 90 Fed. Reg. at 47951. Executive Order 12866 generally provides that, for regulatory actions subject to OIRA review, OIRA shall waive review or notify the agency of the results of its review within 90 calendar days after submission of the required materials. *See* E.O. 12866 § 6(b)(2)(B), 58 Fed. Reg. 51735, 51742 (Oct. 4, 1993). The Executive Order specifically contemplates regulatory actions subject to court-imposed deadlines and directs agencies, to the extent practicable, to schedule rulemaking proceedings to permit sufficient time for OIRA review. *Id.* § 6(a)(3)(D). As noted above, DOL will seek expedited review and will respond promptly to issues raised during that process, but the Department cannot unilaterally determine when OIRA will complete its review. The time included in DOL's estimate

for OIRA review therefore reflects a review process that the Department must accommodate, not an additional period of DOL drafting or some kind of elective delay.

Prior AEWR rulemaking provides additional context for DOL's proposed schedule. The rulemaking culminating in the 2023 AEWR final rule proceeded from a proposed rule published on December 1, 2021, to a final rule published on February 28, 2023, an interval of approximately fifteen months. *See* 86 Fed. Reg. 68174 (Dec. 1, 2021); 88 Fed. Reg. 12760 (Feb 28, 2023). Although that rulemaking involved a different procedural posture and culminated in a final rule, the Department's present proposal contemplates a substantially shorter period—approximately six months—to develop, clear, obtain review and approval of, and issue a replacement IFR responsive to the Court's Order. That highly accelerated process must nevertheless allow the Department to undertake the careful and reasoned decision-making required by the APA and identified in the Court's August 26 Order, including consideration of relevant data and reasonable alternatives, a reasoned and satisfactory explanation connecting the facts found to the Department's policy choices, and compliance with applicable statutory and procedural requirements. *See* ECF No. 99 at 9-10, 18-19, 21-23; *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *Nat'l TPS All. V.* Noem, 166 F.4th 739, 772 (9th Cir. 2026) (Mendoza, J., concurring for the majority) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020)). Those steps are necessary not only to respond to the Court's Order, but also to produce a durable, legally defensible, and administrable rule for farmworkers, agricultural employers, the Department, and the broader regulated community.

DOL will provide the Court with updates on its progress according to whatever reporting schedule the Court establishes. The Department requests 60-day periods for status updates. The Department will promptly advise the Court of any material development affecting the projected schedule.

## II. UFW's Entry

The Court's order declaring the Department of Labor ("DOL")'s methodology unlawful, and directing DOL to promptly produce a lawful, substitute methodology, was issued on August 26, 2026—now over one month ago. DOL now seeks up to an additional *six months* to produce an interim methodology that this Court has (twice) told it to produce promptly. Specifically, DOL requests up to three extra months to generate an interim methodology, and up to three more months on top of that to then

comply with bureaucratic red tape. DOL would then presumably need additional time to generate, and publish, new, lawful Adverse Effect Wage Rates ("AEWRs") under the new methodology. And all of this would be in addition to the time DOL has already had since this Court issued its summary judgment order.

All told, under DOL's approach, roughly seven or more months would pass before farmworkers finally receive relief from a rule that has depressed their wages for almost a year now. The Court should decline DOL's proposal, and require DOL to produce an interim rule within three weeks (by **October 19, 2026**), and then direct DOL to push that new rule through the review process over the subsequent four weeks (by **November 16, 2026**). Starting on October 19, 2026, the parties can then file a joint status report every two weeks where DOL can update the Court on the status of the review process for the interim rule. If DOL believes it will need additional time to complete that review process, it should have to explain to the Court the efforts it has already made, and provide the reasons why additional time is nonetheless necessary. This process would still give DOL nearly three months from the date of the Court's summary judgment order to generate a lawful methodology.

The Court should adopt Plaintiffs' proposal, and reject DOL's alternative proposal. *First*, as this Court recognized in its September 17, 2026 Order, DOL must act promptly in light of the "ongoing harm to plaintiffs and plaintiff United Farm Workers' members." ECF No. 103 at 2. Giving DOL an additional six months (or more) would only prolong those harms.

*Second*, DOL has yet to explain to the Court why it needs a significant amount of additional time to generate a suitable, interim measure. DOL can quickly comply with several elements of the Court's summary judgment order. For example, to comply with this Court's holding that the two-tier system is unlawful, DOL could simply abandon that system and revert to using mean wages to generally set AEWRs. To comply with this Court's holding that the housing deduction is unlawful, DOL can abandon the housing deduction. To comply with this Court's holding that DOL's current reliance on OEWS data, without adjustments, is impermissible, DOL can promptly calculate an upward adjustment and apply that adjustment to the AEWRs. DOL fails to explain why these basic measures would take a significant amount of time to adopt.

*Third*, DOL's arguments for why it needs an extended period of time to follow an elongated review process are unpersuasive. For example, DOL argues that it needs to submit any interim rule for OIRA

review, as required by Executive Order 12866. But DOL cites to no authority indicating that it can delay its compliance with a federal court order because it must follow a procedure imposed by regulation. If that were the rule, the federal government could impede the effectiveness of court orders by imposing, via regulation, numerous bureaucratic hurdles that agencies must follow before they comply with those orders. Additionally, DOL indicates that, by statute, it must consult with certain other components. DOL, however, offers no evidence for why that process must take an additional three months, especially when DOL is issuing an interim measure *in response to a federal court order*.

Therefore, Plaintiffs ask that this Court order DOL to craft an interim methodology, and notify this Court of that proposed interim methodology through a joint status report, by **October 19, 2026**. If DOL requires additional time to coordinate with other Executive Branch components, Plaintiffs request this Court limit such time to four weeks, so that the effective date of the interim rule would be no later than **November 16, 2026.** The parties can file status reports every two weeks starting on October 19, 2026, where DOL can update the Court on the status of its efforts to comply with this Court's summary judgment order.

Finally, the Court asked the parties to speak to "whether the IFR should be vacated prior to or upon the issuance of such new interim methodology." ECF No. 103 at 3. To the extent that DOL continues to argue that the Court's decision not to vacate the Interim Final Rule will delay, or otherwise impede, DOL's attempt to generate a substitute methodology, the Court should now vacate the Interim Final Rule.

DATED: September 28, 2026

Respectfully submitted,

/s/ *Kuntal Cholera*
Kuntal Cholera*
Tom Plotkin*
Mark Andrews-Lee*
Christina Coleburn*
Lindsay Williams*
Sela Carrington**
Covington & Burling LLP
850 Tenth Street, NW
Washington, DC 20001

(202) 662-5367
kcholera@cov.com
tplotkin@cov.com
mandrewslee@cov.com
ccoleburn@cov.com
liwilliams@cov.com
scarrington@cov.com
*Admitted *pro hac vice*
***Pro hac vice* application forthcoming

Mario Martinez, Esq.
Edgar Aguilasocho, Esq.
Martinez Aguilasocho Law, Inc.
P.O. Box 1998
Bakersfield, CA 93303
Phone: 661-859-1174 | Fax: 661-840-6154
mmartinez@farmworkerlaw.com
eaguilasocho@farmworkerlaw.com
info@farmworkerlaw.com

Lori Johnson*
Rebecca Rosefelt*
Farmworker Justice
1126 16th St. NW, Suite 507
Washington, DC 20036
ljohnson@farmworkerjustice.org
rrosefelt@farmworkerjustice.org
*Admitted *pro hac vice*

Verónica Meléndez (SBN 294106)
Cecilia Guevara Langberg (SBN 307159)
California Rural Legal Assistance Foundation
2210 K Street, Suite 201
Sacramento, CA 95816
Tel: (916) 446-7905
Fax: (916) 446-3057
vmelendez@crlaf.org
cguevarazamora@crlaf.org

*Attorneys for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BRAD P. ROSENBERG
Chief Litigation Counsel
Federal Programs Branch

*/s/ Patrick Keating*
PATRICK K. KEATING (MD Bar No. 2211140001)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
(202) 598-0256
patrick.k.keating@usdoj.gov

*Counsel for Defendants*